IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| JESSE JOSEPH BROWN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CASE NO. 2:20-cv-983-JTA |
| ) | (WO) |
| KILOLO KIJAKAZI, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

# **MEMORANDUM OPINION AND ORDER**

Pursuant to 42 U.S.C. § 405(g), the claimant, Jesse Joseph Brown ("Brown"), brings this action to review a final decision by the Commissioner of Social Security ("Commissioner"). (Doc. No. 1.)[1] The Commissioner denied Brown's claim for Supplemental Security Income ("SSI") (*Id.*) The parties have consented to the exercise of dispositive jurisdiction by a magistrate judge pursuant to 28 U.S.C. § 636(c). (Docs. No. 10, 11.)

After careful scrutiny of the record and the briefs submitted by the parties, the Court finds that the decision of the Commissioner is due to be AFFIRMED.

---

[1] Document numbers, as they appear on the docket sheet, are designated as "Doc. No."

I.      PROCEDURAL HISTORY AND FACTS

Brown was born on September 12, 1983 and was 35 years old at the time of the administrative hearing held on June 8, 2020. (R. 36.)[2] He finished the eleventh grade and obtained a GED. (R. 49.) Brown has worked numerous short-term jobs with the last positing being a security guard from 2007 to 2008. (R. 53-55.) On August 14, 2019, Brown filed an application for SSI under Title XVI of the Social Security Act ("the Act") (42 U.S.C. § 1381, *et seq*.), alleging a disability onset date of January 1, 2015, due to bipolar disorder and schizophrenia. (R. 28, 195.)

Brown's claim was initially denied on October 3, 2019 (R. 87) and upon reconsideration on November 6, 2019 (R. 100). Brown subsequently requested an administrative hearing on November 26, 2019. (R. 114.) The hearing was held on June 8, 2020 via teleconference. (R. 42-77.) The Administrative Law Judge ("ALJ") returned an unfavorable decision on July 17, 2020 (R. 28-37), and Brown filed a Request for Review of Hearing Decision on June 24, 2020 (R. 132-133). On November 9, 2020, the Appeals Council denied Brown's request for review (R. 1-4), and the hearing decision became the final decision of the Commissioner.[3] On December 1, 2020, Brown filed the instant action seeking review of the Commissioner's final decision. (Doc. No. 1.)

---

[2] Citations to the administrative record are consistent with the transcript of administrative proceedings filed in this case. (Doc. No. 21.)

[3] "When, as in this case, the ALJ denies benefits and the [Appeals Council] denies review, [the court] review[s] the ALJ's decision as the Commissioner's final decision." *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001) (citation omitted).

## II.     STANDARD OF REVIEW

Judicial review of disability claims is limited to whether the Commissioner's decision is supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). "The Commissioner's factual findings are conclusive" when "supported by substantial evidence." *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). "Substantial evidence" is more than a mere scintilla and is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) (quoting *Lewis v. Callahan*, 125 F.3d 1346, 1349 (11th Cir. 1997)). Even if the Commissioner's decision is not supported by a preponderance of the evidence, the findings must be affirmed if they are supported by substantial evidence. *Id*. at 1158-59; *see also Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The court may not find new facts, reweigh evidence, or substitute its own judgment for that of the Commissioner. *Bailey v. Soc. Sec. Admin., Comm'r*, 791 F. App'x 136, 139 (11th Cir. 2019); *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004); *Dyer*, 395 F.3d at 1210. However, the Commissioner's conclusions of law are not entitled to the same deference as findings of fact and are reviewed *de novo*. *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1260 (11th Cir. 2007).

## III.    STANDARD FOR DETERMINING DISABILITY

An individual who files an application for SSI must prove that he is disabled. *See* 20 C.F.R. § 416.912(a). The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental

impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 416.905(a).

Disability under the Act is determined by a five-step sequential evaluation process. *See* 20 C.F.R. § 416.920(a). The evaluation is made at the hearing conducted by the ALJ. *See Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1359 (11th Cir. 2018). First, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(i). "Substantial gainful activity" is work activity that involves significant physical or mental activities. 20 C.F.R. § 416.972(a). If the ALJ finds that the claimant is engaged in substantial gainful activity, the claimant cannot claim disability. 20 C.F.R. § 416.920(b). Second, the ALJ must determine whether the claimant has a medically determinable impairment or a combination of impairments that significantly limit the claimant's ability to perform basic work activities. 20 C.F.R. § 416.920(c). Absent such impairment, the claimant may not claim disability. (*Id.*) Third, the ALJ must determine whether the claimant meets or medically equals the criteria of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. §§ 416.920(d), 416.925, and 416.926. If such criteria are met, then the claimant is declared disabled. 20 C.F.R. § 416.920(d).

If the claimant has failed to establish that he is disabled at the third step, the ALJ may still find disability under the next two steps of the analysis. At the fourth step, the ALJ must determine the claimant's residual functional capacity ("RFC"), which refers to the claimant's ability to work despite his impairments. 20 C.F.R. § 416.920(e). The ALJ

must determine whether the claimant has the RFC to perform past relevant work. 20 C.F.R. § 416.920(f). If it is determined that the claimant is capable of performing past relevant work, then the claimant is not disabled. 20 C.F.R. § 416.960(b)(3). If the ALJ finds that the claimant is unable to perform past relevant work, then the analysis proceeds to the fifth and final step. 20 C.F.R. § 416.920(g)(1). In this final analytical step, the ALJ must decide whether the claimant is able to perform any other relevant work corresponding with his RFC, age, education, and work experience. 20 C.F.R. § 416.960(c). Here, the burden of proof shifts from the claimant to the ALJ in proving the existence of a significant number of jobs in the national economy that the claimant can perform given his RFC, age, education, and work experience. 20 C.F.R. §§ 416.920(g), 416.960(c).

In cases such as this one where the claimant filed an application for benefits after March 17, 2017,[4] the ALJ evaluates medical opinions according to (1) supportability; (2) consistency; (3) the provider's relationship with the claimant; (4) the provider's specialization; and (5) "other factors that tend to support or contradict a medical opinion or prior administrative medical finding." 20 C.F.R. § 416.920c(c)(1-5).

## IV. ADMINISTRATIVE DECISION

Within the structure of the sequential evaluation process, the ALJ in this case found that Brown has not engaged in substantial gainful activity since August 14, 2019, the

---

[4] On January 18, 2017, the Commissioner published final rules titled "Revisions to Rules Regarding the Evaluation of Medical Evidence." 82 Fed. Reg. 5844. *See Works v. Saul*, No. 4:19-cv-01515-MHH, 2021 WL 690126 (N.D. Ala. Feb 23, 2021) (discussing new framework for how the Commissioner assesses medical evidence after March 27, 2017).

application date, and that he has the following severe impairments: psychotic disorder, bipolar disorder, and attention deficit hyperactivity disorder ("ADHD"). (R. 30.) The ALJ noted that there was no evidence of treatment for Brown's polysubstance abuse which was in remission as of September 2019. (R. 30.) The ALJ considered Brown's mental impairments under Listing 12.03 (Schizophrenic, Paranoid, and Other Psychotic Disorders), Listing 12.04 (Depressive, Bipolar, and Related Disorders) and Listing 12.11 (Neurodevelopmental Disorders). (R. 30.) He found that Brown did not satisfy any of these Listings.

After consideration of the entire record, the ALJ determined that Brown retains the RFC to perform a full range of work at all exertion levels with the following non-exertional limitations:

> [Brown] must avoid unprotected heights and dangerous moving machinery. He is limited to simple routine tasks, but not at a production rate pace. [He] is limited to occupations requiring no more than simple work related decisions with no more than occasional changes in the work setting. He is limited to occasional interaction with supervisors, coworkers, and the public.

(R. 33.) The ALJ determined that transferability of job skills is not an issue because Brown has no past relevant work. (R. 36.) In addition, considering Brown's age, education, work experience, and RFC, the ALJ found that there are jobs that exist in significant numbers in the national economy that he can perform. (R. 36.) The ALJ concluded that Brown had not been under a disability, as defined in the Social Security Act, since August 14, 2019, the date the application was filed. (R. 37.) The ALJ found that based on the application for SSI filed on August 14, 2019, Brown is not disabled under section 1614(a)(3)(A) of the Social Security Act (42 U.S.C. § 1382c(a)(3)(A)). (*Id.*)

## V.     DISCUSSION

Brown argues on appeal that the ALJ erred in finding that his mental impairments do not meet or medically equal the criteria of Listing 12.03. (Doc. No. 17 at 6.) The Commissioner responds that the ALJ properly evaluated Brown's mental impairments under the Listing and that Brown failed to prove that he is disabled within the meaning of the Social Security Act. (Doc. No. 20 at 3-4.) The Court addresses this issue below.

The Listing of Impairments in the Social Security regulations describes conditions that are so severe as to prevent a person from performing any gainful activity. *See* § 20 C.F.R. pt. 404, Subpt. P, App. 1; *Wilson v. Barnhart,* 284 F.3d 1219, 1224 (11th Cir. 2002). A claimant bears the burden of proving that he has an impairment that meets a listing. *See Barron v. Sullivan,* 924 F.2d 227, 229 (11th Cir. 1991). "To 'meet' a Listing, a claimant must have a diagnosis included in the Listings and must provide medical reports documenting that the conditions meet the specific criteria of the Listings and the duration requirement. To 'equal' a Listing, the medical findings must be 'at least equal in severity and duration to the listed findings." *Wilson,* 284 F.3d at 1224 (internal citation omitted). The medical findings presented by the claimant must satisfy *all* of the criteria of a particular listing and "[a]n impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Sullivan v. Zebley,* 493 U.S. 521, 530 (1990). If a claimant can meet a listed impairment or otherwise establish an equivalence, then a claimant is presumptively determined to be disabled and the ALJ's sequential evaluation of a claim ends. *Edwards v. Heckler*, 736 F.2d 625, 626 (11th Cir. 1984).

The criteria for Listing 12.03 are:

**12.03 Schizophrenia spectrum and other psychotic disorders (see 12.00B2), satisfied by A and B, or A and C:**

A.  Medical documentation of one or more of the following:

  1. Delusions or hallucinations;
  2. Disorganized thinking (speech); or
  3. Grossly disorganized behavior or catatonia.

AND

B.  Extreme limitation of one, or marked limitation of two, of the following areas of mental functioning (see 12.00F):

  1. Understand, remember, or apply information (see 12.00E1).
  2. Interact with others (see 12.00E2).
  3. Concentrate, persist, or maintain pace (see 12.00E3).
  4. Adapt or manage oneself (see 12.00E4).

OR

C.  Your mental disorder in this listing category is "serious and persistent;" that is, you have a medically documented history of the existence of the disorder over a period of at least 2 years, and there is evidence of both:

  1. Medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of your mental disorder (see 12.00G2b); and

  2. Marginal adjustment, that is, you have minimal capacity to adapt to changes in your environment or to demands that are not already part of your daily life (see 12.00G2c).

20 C.F.R. pt. 404, Subpt. P, App. 1, § 12.03. Thus, for Brown to show that he met Listing 12.03, he must show his impairments met either (1) Paragraphs A and B, or (2) Paragraphs A and C. *Id*. § 12.00A2.

In this case, the ALJ set forth the criteria for Paragraph A of Listing 12.03 but did not state a finding as to whether Brown satisfied the criteria. (R. 30-31.) Rather, the ALJ

8

addressed the criteria for Paragraph B and Paragraph C of Listing 12.03 and concluded that Brown did not satisfy those criteria. The ALJ found that Brown was not markedly impaired in two, or extremely impaired in one, of the four areas of functioning assessed under Paragraph B of Listing 12.03. (R. 31.) The ALJ assessed Brown's abilities as follows:

> (1) understand, remember or apply information – moderately impaired;
> (2) interact with others – moderately impaired;
> (3) concentrate, persist, or maintain pace – moderately impaired;
> (4) adapt or manage himself – mildly impaired.

(R. 31-32.) Finally, the ALJ found that the evidence failed to satisfy Paragraph C of Listing 12.03 because

> there is no medically documented history of a chronic affective disorder of at least two years duration and repeated episodes of decompensation; or a residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands would cause decompensation; or a history of being unable to function outside a highly supportive living arrangement. There is no medically documented history of anxiety resulting in complete inability to function independently outside the area of one's home.

(R. 32-33.) Given his findings as to why Brown did not satisfy Paragraphs B or C of Listing 12.03, the ALJ concluded that Brown's impairments do not meet or medically equal the severity of Listing 12.03 in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 416.920(d), 416.925, and 416.926). (R. 30.)

In evaluating the medical evidence of record, the ALJ noted that the record showed a "longstanding history of multiple psychiatric diagnoses including psychotic disorder, bipolar disorder and ADHD." (R. 34.) The ALJ further noted however that the diagnoses "involve significant overlap in terms of the associated symptoms and functional limitations," and it was "unclear as to the extent to which each of these specific diagnoses

9

causes or contributes to [Brown's] mental functional limitations . . . ." (R. 34-35.) The ALJ determined that, while Brown's impairments imposed functional limitations, the medical evidence did not establish greater limitations that were inconsistent with his RFC determination. (R. 35.) The ALJ found the opinion evidence from State agency psychological consultants Robert Estock, M.D. (initial application, R. 78-87) and Leslie Rodrigues, Ph.D. (reconsideration stage, R. 89-100) to be both persuasive and supported by detailed explanations and consistent with the medical evidence of record. (R. 35.)

The ALJ evaluated Brown's medical evidence of record pursuant to 20 C.F.R. § 416.929 and SSR 16-3p, as well as § 416.920c. (R. 33.) He found that Brown's medically determinable impairments could reasonably be expected to cause the alleged symptoms underlying his claim of disability, but that Brown's statements regarding the intensity, persistence and limiting effects were not entirely consistent with the medical evidence and other evidence in the record. (R. 34.) The record contained evidence of Brown's diagnosis of unspecified psychosis and bipolar mood disorder with auditory/visual hallucination that affect his ability to focus, drug use prior to July 2019, social isolation due to having anxiety around other people, termination from his job as a security guard and primary activity of watching television. (R. 34, 53-60, 213, 410, 499.) Brown said that he was successful at his security guard job because he did not have to interact with others until he was fired for arguing with his supervisor. (R. 53-54.) The ALJ heard testimony from Brown's father, John Brown, with whom Brown has lived his entire life. (R. 63.) The elder Brown testified that his son's mental problems began in school and were the reason he could not maintain employment. (R. 63-65.)

Testimony showed that Brown's mental illnesses also caused violent behaviors in the past which led his father to have him involuntarily committed four times between 2016 and 2019. (R. 65-68; 150-83.) Brown's father helps Brown shave because he is afraid for Brown to have any sharp objects and believes that Brown would kill someone if allowed to live independently. (R. 68-69.) The Third-Party Function Report completed by Brown's father describes how he reminds his son to take his medicine and repeats instructions for performing chores. (R. 207-08.) In-patient treatment records from Brown's fourth involuntary commitment in July 2019 showed improvement, as his mood was euthymic and he denied hallucinations, suicidal/homicidal ideations and delusions. (R. 572-78.)

The ALJ considered Brown's activities of daily living, including walking with his father, household/yard chores with supervision by his father, shopping for food, preparing frozen dinners and watching television. (R. 35, 210, 215-17.) Hearing testimony that Brown could not engage in sustained work because of mental limitations was rejected based upon the ALJ's finding that treatment records did not support the claimed intensity or persistence of Brown's subjective allegations. (R. 36.) The ALJ determined that, despite some limitation by his impairments, Brown is "capable of doing a range of unskilled work on a sustained and continuous basis." (R. 36.)

A.     Paragraph A Criteria

Brown contends that he meets the Paragraph A criteria for Listing 12.03 because he suffers from delusions and hallucinations and provided testimony of the same. (Doc. No. 17 at 7.) Brown asserts that his testimony was supported by his father's testimony and his medical records, but he fails to identify which specific medical records upon which he

11

relies. (*Id.*) The Commissioner argues that the hearing testimony cited by Brown cannot serve as evidence under Paragraph A because medical documentation of delusions or hallucinations is required. (Doc. No. 20 at 6.)

The ALJ decision does not provide a finding as to whether Brown met the Paragraph A criteria for Listing 12.03, perhaps because it must exist in combination with the Paragraph B or Paragraph C criteria to satisfy the Listing. (R. 30-31.) Nonetheless, such omission by the ALJ does not require reversal. *See Bellew v. Acting Comm'r of Soc. Sec.*, 605 F. App'x 917, 920 (11th Cir. 2015) (An ALJ's finding that a claimant does not meet a listed impairment may be implied from the record.); *Flemming v. Comm'r of the Soc. Sec. Admin.*, 635 F. App'x 673, 676 (11th Cir. 2015).

The ALJ discussed Brown's medical records documenting his denial of hallucinations and delusions during his last hospitalization, in contrast to the hearing testimony that he experiences hallucinations on a daily basis. (R. 34, 35, 56-58, 572-78.) Therefore, the Court finds substantial evidence to support the ALJ's implicit finding. Reversal is not warranted on this ground.

  B. Paragraph B Criteria

As for the Paragraph B criteria for Listing 12.03, Brown challenges the ALJ's finding that he is only moderately limited in the two domains of interacting with others and ability to adapt or manage himself. (Doc. No. 17 at 7.) Brown asserts that he has never married, has no children, does not like to be around people and cannot hold a job because he cannot get along with supervisors and co-workers. (*Id.*) Brown contends that those

facts coupled with his living arrangements with his father and inability to live independently establish his inability to adapt or manage himself.  (*Id.*)

As to the domain of interacting with others, the ALJ adopted the conclusions by Dr. Estock and Dr. Rodrigues that Brown was moderately limited in his interactions with others.  (R. 82, 95.)  The ALJ considered Brown's violence against his father in the past and preference for solitude.  (R. 31, 60, 66-67.)  However, Brown's updated mental health records showed that he made good eye contact and had normal speech with a mood ranging between good with an anxious affect to euthymic.  (R. 31, 609, 611, 635, 641.)

As to the domain of adapting or managing oneself, Dr. Estock found that Brown was moderately limited while Dr. Rodrigues found only a mild limitation.  (R. 82, 95.)  The ALJ determined that Brown has a mild limitation in this area and cited individual therapy records from October 2019 indicating that he was compliant with his medications with no reported side effects, was sleeping well, not engaging in substance abuse and getting along with his father.  (R. 32, 643.)

Upon review of the record, the Court finds that substantial evidence supports the ALJ's decision, and the ALJ reviewed the pertinent evidence and adequately addressed the evidence related to the Paragraph B criteria.  Brown does not address how the ALJ erred by adopting the medical opinions of Drs. Estock and Rodrigues or how those opinions were not supported by the record.  Consequently, the Court finds that the ALJ did not err in finding that Brown did not meet the criteria of Paragraph B.

C. Paragraph C Criteria

Brown argues that he satisfied the criteria of Paragraph C of Listing 12.03 because he "has a medically documented history of the existence of a disorder over a period of at least two years" and there is evidence of "medical treatment, mental health therapy, psychosocial support, or a highly structured setting that . . . diminishes the symptoms and signs of his mental disorder." (Doc. No. 17 at 8.) He further argues "there has been marginal adjustment." (*Id.*)

The ALJ considered the Paragraph C criteria in Brown's case but specifically found no

> medically documented history of a chronic affective disorder of at least two years duration and repeated episodes of decompensation; or a residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands would cause decompensation; or a history of being unable to function outside a highly supportive living arrangement. There is no medically documented history of anxiety resulting in complete inability to function independently outside the area of one's home.

(R. 32-33.)

"To 'equal' a Listing, the medical findings must be 'at least equal in severity and duration to the listed findings." *Wilson,* 284 F.3d at 1224. The Court notes that the ALJ applied 20 C.F.R. § 416.926, the regulation governing consideration of medical equivalence, to his decision-making process. (R. 30.) The hearing decision reflects that the ALJ considered evidence of Brown's symptoms for equivalency under Listing 12.03. *See Gardner v. Comm'r of Soc. Sec*, Case No.: 2:20-cv-331-MRM, 2021 WL 3674305, at *5 (M.D. Fla. Aug. 19, 2021) (quoting the Eleventh Circuit's holding in *Flemming*, 635 F.

App'x at 676, that an ALJ's failure to discuss Listing 12.03 does not mean the listing was not considered where the decision otherwise reflects consideration of the plaintiff's psychotic symptoms).

The Court finds that the ALJ evaluated and weighed the evidence before him for listing equivalency and that Brown has not provided grounds to question his decision. *Gardner*, 2021 WL 3674305, at *10.  "The Commissioner's factual findings are conclusive" when "supported by substantial evidence." *Doughty*, 245 F.3d at 1278.  The Court finds that the ALJ decision is supported by substantial evidence and that Brown has failed to demonstrate otherwise.

## VI.   CONCLUSION

After review of the administrative record, and considering Brown's arguments, the Court finds the Commissioner's decision is supported by substantial evidence and is in accordance with applicable law.  Accordingly, it is hereby

ORDERED that the decision of the Commissioner is AFFIRMED.

A separate judgment will be issued.

DONE this 27th day of May, 2022.

*/s/ Jerusha J. Adams*
JERUSHA T. ADAMS
UNITED STATES MAGISTRATE JUDGE